Thank you, Your Honor. May it please the Court, my name is Mark Ebert, and I represent Mr. Ladell Brown, and I would like to reserve about three minutes of my time for rebuttal. I'd like to start by bringing the Court's attention to a case that was decided by the Ninth Circuit in May 2010, shortly after the answering brief was filed, and that is Lunbury v. Hornbeek, Ninth Circuit 2010, cert denied. In that case, the Court ruled that if proved, the failure to call Dr. Offshee, who's the very same expert whose testimony was excluded in this case, to testify about the involuntariness of a confession would constitute ineffective assistance of counsel. And I would submit that it cannot be both ineffective assistance of counsel not to call Dr. Offshee on the validity of a confession, and legally correct at the same time, for the trial court to exclude that same expert's testimony on the same issue. How do you deal with the issue of Evidence Code 801? Doesn't that give the trial judge the license to do what he did there? Well, I mean, the trial judge obviously is the one who makes the ruling on the admissibility of evidence. However, in this case, what we have is an expert whose testimony and whose evidence is the complete defense here. But forgive me, counsel, was there a proper mate of what he was going to say? Yes. And what did he say that was within the province of an expert witness? Well, first of all, just to point out, the trial court did qualify him as an expert, both at the pre-trial proceedings where he testified. I don't question that much. I guess what I struggle with in this is whether he's really dealing with matters that are beyond common experience, that would assist the trier of fact, and didn't really get into the province of the trier of fact. What he is is an expert on modern police interrogation methods. Police and federal agents, of course, are trained, extensively trained in how to interrogate people. This is not something that everybody knows. This is not some – I'm sorry, Your Honor? How does Hornby reconcile with Moses v. Payne? Because even if we believe that this is what should have been done, is this a clear misapplication of Federal law, given the route that this case took to this Court? Moses v. Payne actually doesn't resolve this in any way. I don't think it's applicable, because all that said was that the balancing test that this Court created in Perry v. Rushen and Miller v. Stagner was an inappropriate balancing test to use. It dealt with the method of determining whether or not this expert's testimony could be admitted or not, not with whether it was in fact. But it just marbly indicates under Moses, this is an AEDPA case. Mm-hmm. We see this whole case through the filter, if you will, of AEDPA. And in order to establish the point you're making, you've got to do that through AEDPA. And doesn't Moses v. Payne basically say, hey, you've got a problem here? I think that the Supreme Court has not been very kind to habeas petitions under AEDPA, but it is certainly not. We've noticed that. It is certainly not. But it bounds us. Whether they've been kind is of no moment. It binds us here. So how does it get around? Because there's no Supreme Court case that, according to Moses, squarely addresses whether a court's exercise of discretion to exclude expert testimony violates the criminal defendant's constitutional right to present relevant evidence. Where is the Supreme Court precedent? Actually, the Supreme Court precedent is Crane v. Kentucky. And that is a case where the expert testimony having to do with, well, excuse me, the evidence having to do with the involuntariness of the confession was the sole defense. And here my argument on the expert is that by excluding this expert. Well, in Crane, did the Court establish a standard for evaluating discretionary decisions to exclude the kind of evidence that we are questioning here? Not in Crane. This Court established a standard. Well, has the Supreme Court established that any place? In terms of how to go about determining whether? That's correct, yes. Not that I'm aware of. Isn't that our dilemma here, then? But what they have said is that it is the government's burden to show, by a preponderance of the evidence, that under the totality of the circumstances, this confession was, in fact, voluntary. And I said that. That's a different issue. The totality issue comes in the first part of your argument, right? Right. But as far as Dr. Oshii, is that how you say it? I think so. However. I've never met him. The good doctor. Yes. As far as the doctor is concerned, do you agree with what Judge Marbley indicated, that there is no Supreme Court precedent that establishes the point you're trying to make? I think that Crane establishes the point that I'm trying to make, Crane versus Kentucky. Because in that case, they found that excluding evidence of the involuntariness of a confession, which was the entire defense, was a violation of due process. So I guess, I guess what I'm saying is. But Crane stopped short of establishing the standard for evaluating the discretionary decisions that the court exercised here. That's the point. That's where Crane falls short as far as you're concerned. What standard do we use, Mr. Ebert? The standard that you use on the, this issue is that established, okay, in Crane versus Kentucky, because it has almost identical facts. In Lego v. Tuomi and in U.S. v. Cronic, and that is the right to present witnesses to present a complete defense, and that was the only defense in this case. But that was dealing with the right to present witnesses is not a question here. The defense had an opportunity to present witnesses. We're talking about experts. Yes. And the judge made the discretionary decision to exclude this doctor after he had heard him at the suppression hearing. You concede that the court had the opportunity to hear this doctor, to hear his testimony. Right. Counsel, if I could ask just one question. Sure. As you know, I was on that Moses v. Payne panel, and I dissented. Of course, I'm bound by what it said now. But the expert that was excluded in that case, in some ways, was a more central expert than the expert in this case. That is, in that case, the expert testimony that was excluded in discretion was an expert who could have given testimony that the gun could have gone off accidentally, the doctor didn't necessarily shoot his wife, et cetera. Whereas in this case, the expert would give some testimony relating to what police practices might tend to create a course of atmosphere. Correct. It seems to me that this case is a weaker case than Moses v. Payne. Well. So I could be wrong, but unless you can explain to me why there's a more compelling reason to say under AEDPA that there's error here than there was in that case, I would feel bound by it. The best answer I can give, Your Honor, is that the only reliable evidence in this case was the confession and that the sole defense was that the confession was involuntary. It's one thing to be able to argue in closing argument that a confession is involuntary, but you have to have something to base it on. You have to have some evidence. And here we have a man who was qualified by the trial court as an expert in this field, and the only reason he was excluded was because the defendant gave another reason at one of his interrogations. But how can you say that this confession was the only evidence? Because I thought, unless I'm confusing myself here, I thought that there was a victim, Victor. Right. Victor Jones. Right. You testified explicitly that this guy is the guy who had the rifle and that he saw this guy shoot his wife. And I realized that Victor Jones had been taking a lot of cocaine and partying, but still he had the presence of the mind to give the room numbers of the appellant and the other guys when the homeowner called 911. So he wasn't totally out of it. What I said was it was the only reliable evidence, and I based that on the prosecutor's own argument in closing that he didn't need Victor's testimony in order to convict Mr. Brown. He said that the prosecutor said that that witness was, quote, not a great communicator. You know that we had to ask questions over and over and over again. He was difficult to understand. He was hard to follow. He's the same guy that the officers were dealing with the night of the shooting. So just think how difficult it was for them to get an accurate statement about what was going on out there, end quote. And he also added that Victor's testimony was different, or his story was different every time he told it. Counsel, is there any significance to the fact that the confession, that there really wasn't a total confession? No. It was like admissions. He admitted he was there. He had a gun. He shot in the direction of Victor. He didn't confess to shooting Victor's wife. He didn't confess even to shooting, trying to hit Victor. No, I don't think so. I think those admissions were pretty damning, and they were the main evidence used to convict him. Counsel, you're over your time. I'll give you a minute and rebuttal after we hear from the State. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. I have no particular points to add regarding the expert testimony unless the Court has questions. Actually, I don't really have any points to add regarding the first issue unless the Court has questions. You don't have to. You know, if you're comfortable with the brief, unless the members of the Court have questions. Do we have any questions? I have some questions. Great. Okay. I'm concerned, Counsel, about the statements made by overall. In your view, were these statements false, the statements about her children, about the defendant's children, rather? Well, my answer is no, but I'm not sure. The fact that if the defendant cooperated, he would be out and be able to see his child born, do you think that was true? Well, I don't believe it's true that he would be out if he cooperated and confessed to a crime, but the statements by everyone, including detectives and overall, was that if you are guilty, shut up. That's what they told him repeatedly. That's what overall told him? I thought she was trying to get him to tell what happened at the scene because she was administering the polygraph test. She wanted him to tell what happened at the scene because he told her that what was really important to him was to see his child born. And she told him that if he just cooperated and told her what happened because she felt he was being deceptive, that she could get out and see his child born. Isn't that what she said? I must disagree with you, Your Honor, because what he was told was if what he had to say was exculpatory, then talking would help him. He was at no point told that all you have to do is say you used a gun. All you have to do is cooperate and you will be released. To the contrary, he was told over and over what he says will be used against him. But, obviously, if what you have to say makes you innocent, you don't have a problem with it being used against you. That's precisely what... I'd like to go back and check the record, because I believe that there are comments by overall that he would get leniency if he told what happened and that he would be able to see his child. And it struck me that this case was in the nature of Haines and Tingle and Lynham that, you know, she used the affinity for this man's child to get him to make these confessions. Well, Your Honor, she didn't even bring up the subject. The defendant kept mentioning his child. She exploited it, Mr. Eldridge. But to say that she exploited it merely because she didn't outright ignore it really puts her in an uncomfortable or actually impossible position. How so, Mr. Eldridge? Well, Your Honor, to say that he would like to meet his child... He's a polygraph examiner, right? Isn't her responsibility simply to ask questions about what happened as opposed to tell him what the consequences of his statements might be? When you say her responsibility, I don't know any particular responsibility she has under the Constitution, which would have to inform our analysis here. And I'm certain the Supreme Court hasn't said anything about what polygraph examiners must or must not say, merely because they're a polygraph examiner. So she can lie to him and induce him to confess, and that's constitutionally valid because the Supreme Court hasn't spoken to polygraph examiners? No. Your Honor, when you mentioned her as a polygraph examiner as opposed to detectives, I took it to mean you were imposing some special duty that doesn't apply to detectives themselves. If what you're saying is... Wouldn't it apply to anyone who's inducing a confession when a person is in custodial interrogation, Mr. Eldridge? Let's assume that, Your Honor. But she never lied to him about the effect of his statements. You can tell... There is nothing that says you have to be honest with the defendant when you're questioning him about whether you have other evidence against him, whether or not he may be hanging himself, because without it, you wouldn't have any evidence. So you can lie and that's constitutionally permissible. Is that what you're saying? I'm trying to be more precise because what you can't lie about is whether or not it will be used against him. You cannot lie about whether or not, for example, he's making the waiver. You can't lie to him about the nature of the constitutional waiver he's making. Some lies to a criminal defendant in custodial interrogation, therefore, are permissible. Other lies are not, depending on whether it's waiver or some Miranda issues. Is that right? Yes, roughly stated, Your Honor. Okay. Counsel, if I could ask you just one question. Yes, Your Honor. Is the operator of the lie detector test, is she in the same category as the other officers? That is, she's an interrogator, even though she's got the equipment, but is she bound by the same principles that the other interrogating police are bound by? The short answer, I believe, is yes, Your Honor. He is without question in custody, and she is no doubt eliciting statements from him on behalf of the police. Has the Supreme Court said that interrogators can sometimes lie to suspects, like say, well, we've got evidence on you, or someone else said you did it, or we can put you at the scene? You know, can they bluff and lie and say things that aren't true? I'm certain there is no Supreme Court prohibition on that, Your Honor. Okay. I want to follow up on what's just been asked because, to me, the real issue here is, again, what does AEDPA require? And in this particular case, it's analyzed under the totality of the circumstances and whether or not what occurred overbore Brown's exercise of free will. That's really what it boils down to. And in this particular case, of course, the California Court of Appeals applied that standard, and in light of a number of things I won't bother everybody with right now, concluded that she, meaning the officer, made no coercive or deceptive promises and found that overall's tactics did not overcome Brown's exercise of free will. And whether or not one agrees with the Court of Appeals, under AEDPA, what deference do we owe to that finding? Well, under D-2, to the extent that is a question of fact, and indeed what in fact motivates a person has to be factual, unless it was unreasonable, which is more than wrong, which is more than even clear error, it would have to be simply there's no way to plausibly interpret the record that way. So in terms of unreasonableness, following up on what my colleagues have asked, everybody's kind of troubled by the fact that there's at least an argument that the officer overall lied to the defendant. I'm not saying she did, but there's at least a possibility that that's the case. So if one, for discussion purposes, says that that's the case, are we still nonetheless bound by the Court of Appeals' view that that was not unreasonable because it did not overbear his exercise of free will and therefore was a voluntary confession? Well, yes, in that if the state court, for example, makes some finding that you don't agree with, but it's immaterial to the result it reached, for example, because it simply didn't overbear his will, then it is hard to say how that's not an independent basis for decision by the state court. But haven't Lynham and Tingle and Haynes instructed us that those kinds of misrepresentations about being there with your children are sufficient to overbear one's will? The cases you just mentioned, are they Supreme Court cases, Your Honor? Well, Haynes is, Lynham is, and Tingle is out of this circuit. Okay, well, then I'm afraid I don't have them in front of me, and I'm not. However, to the extent the Court has said that sometimes it can, virtually anything can, I suppose, under certain circumstances. The problem is we have a factual finding here that it didn't. And by the way, one of the most important things that the Court found is that he later didn't say that's why he confessed. To the contrary, he said that someone had threatened his baby's mother. Counsel, I wanted to ask you a question on that. My understanding was that when he changed his story and recanted these admissions, that he said that he had said what he said earlier because one of the other guys, the guy he had in the car with him, had threatened to shoot his pregnant girlfriend if he didn't take the rap. Is that right? I believe that's correct. That is the factual reason why he said he confessed. Okay, let me go back to the question Judge Smith was asking. You know, if we've got a state appellate court saying that his will wasn't overborne, but my concern is I don't see how we can view that as a factual finding. It seems to me maybe you get to the same place, but it's really more like a legal conclusion on the totality of circumstances, which we review and I think we can only overrule if it's objectively unreasonable under it. So is that the right analysis that we ask? Is that conclusion about his will being overborne objectively unreasonable? Contrary to a Supreme Court precedent, not is it an unreasonable determination of fact? The problem with that, Your Honor, is that there is necessarily a factual determination that has to be made as to actually why did he speak. That is factual. The law comes in as to whether the reason he spoke is a permissible one under the Constitution. Thank you. Counsel, you've used your time. We thank you for your argument. Mr. Ebert, we'll give you one minute to respond. Thank you, Your Honor. To answer Judge Marbley's question, yes, the statements that Ms. Overall made were false. She told him, for example, that baby growing in your girlfriend right now needs you. It's going to need you a whole lot, and I want you to be able to be with that child and have a life, but only the truth is going to get you that place. She then, and this came up ten times. Counsel, could I interject? Why is that necessarily false? I mean, the baby presumably would live a long time, and the guy could go to prison and have visiting rights, so there could be a difference between someone who cooperates and tells the truth and gets a light term and someone who goes to prison for three times the length of time or gets the death penalty. Why is the statement you said a misrepresentation? I gave that as an example of the multiple times in which she told him that if he agreed with her, and she did tell him what to say, that you shot this woman, that he would be able to be out to be there when his baby was born and to have a life with that baby. And I think that given the fact that what she told him to say was, under the felony murder rule, a confession to first-degree murder, and that is how he was convicted, I think that the purpose, the effect, and the overall context of this makes clear that that's not what she was talking about, visiting rights. She was talking about being there when he was born and having a life with him, and if he, in fact, did what she told him to do, that was never going to happen, and I don't think any Justice Department investigator or police officer would have believed for a second that that was going to happen. And that the Supreme Court has held is coercive. That was the Lynham case, and also this court in Tingle. Okay, thank you. Thank you, both counsel. The case of Brown v. Horrell is submitted. Thank you, counsel.
judges: Marbley, Gould, Smith M.